**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BRISTOL-MYERS SQUIBB CO., E. R. SQUIBB & SONS, L.L.C., ONO PHARMACEUTICAL CO., LTD., and TASUKU HONJO, Plaintiffs, | ) | C.A. No. 15-560-GMS |
| v. | ) | **JURY TRIAL DEMANDED** |
| MERCK & CO., INC. and MERCK SHARP & DOHME CORP., Defendants. | ) | |

**DEFENDANTS MERCK & CO., INC. AND MERCK SHARP & DOHME CORP.'S ANSWER TO PLAINTIFFS' COMPLAINT**

Merck & Co., Inc. and Merck Sharp & Dohme Corp. ("MSD") (collectively "Merck"), by their attorneys, hereby answer the Complaint for a declaratory judgment of patent infringement ("Complaint") of Bristol-Myers Squibb Co. ("BMS"), E. R. Squibb & Sons, L.L.C. ("Squibb"), Ono Pharmaceutical Co., Ltd. ("Ono"), and Tasuku Honjo (collectively "Plaintiffs"), in accordance with the numbered paragraphs thereof, as follows. All allegations of fact and conclusions of law contained in the Complaint are denied, except those specifically admitted herein:

## INTRODUCTION

1. **Complaint ¶ 1:** According to the American Cancer Society, more than one million people in the United States are diagnosed with cancer each year (http://www.cancer.org/cancer/index). Cancer is a disease that results from the uncontrolled proliferation of cells that were once normal but have transformed into cancerous cells. Although a human's natural immune system has the potential to eliminate cancerous cells, cancer cells have the ability to "turn off" the immune system thus allowing the cancer cells to continue to grow



ME1 22261967v.1

unchecked.

**Answer:** Merck admits that the American Cancer Society webpage states, "[m]ore than one million people in the United States get cancer each year." (http://www.cancer.org/cancer /index, accessed March 21, 2016). Merck admits that cancer is a disease that involves the uncontrolled proliferation of cancer cells and that cancer cells result from mutations of normal cells. Merck admits that the human immune system may eliminate certain types of cancer cells and that certain cancer cells may suppress an immune response. Merck denies as stated the remaining allegations in Paragraph 1 of the Complaint.

2. **Complaint ¶ 2:** According to the United States Food & Drug Administration ("FDA"), "[l]ung cancer is the leading cause of cancer death in the United States, with an estimated 224,210 new diagnoses and 159,260 deaths in 2014. The most common type of lung cancer, [non-small cell lung cancer,] affects seven out of eight lung cancer patients" (http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm436534.htm).

**Answer:** Merck admits that the FDA's March 4, 2015 News Release cited in Paragraph 2 of the Complaint stated, "[l]ung cancer is the leading cause of cancer death in the United States, with an estimated 224,210 new diagnoses and 159,260 deaths in 2014. The most common type of lung cancer, [non-small cell lung cancer] affects seven out of eight lung cancer patients . . . ." Merck denies the remaining allegations in Paragraph 2 of the Complaint.

3. **Complaint ¶ 3:** This case relates to a groundbreaking type of cancer treatment called "immunotherapy." Treating cancer using immunotherapy is a scientific breakthrough and has the potential to revolutionize cancer treatment by using a patient's own immune system to eliminate cancer cells.

**Answer:** Merck admits that pembrolizumab, developed and sold by MSD, is a groundbreaking type of cancer treatment involving immunotherapy and that pembrolizumab enhances the ability of the patient's own immune system to eliminate cancer cells, but denies that pembrolizumab or the use of pembrolizumab to treat cancer was invented in the patent in suit and denies the remaining allegations in Paragraph 3 of the Complaint.

4. **Complaint ¶ 4:** T cells are an important part of the human immune system. In addition to eliminating foreign matter such as bacteria and viruses from a human body, they also help remove cancerous cells in the body. T cells carry a protein called PD-1 on their surface. PD-1 serves as an immune system checkpoint, shutting down the T cells' activity at the appropriate time to prevent an overactive immune response. Cancer cells can exploit the PD-1 protein's ability to trigger the immune checkpoint. When the PD-1 is triggered in this way, it shuts down or decreases the T cells' activity of removing the unwanted cancer cells from the body. Thus, the triggering of the PD-1 checkpoint can prevent a patient's immune system from destroying the cancer cells.

**Answer:** Merck admits that T cells are an important part of the human immune system that can eliminate foreign matter from the body, such as bacteria and viruses, and can help remove cancerous cells in the body. Merck admits that certain T cells carry a protein called PD-1 on their surface, and that PD-1 serves as an immune system checkpoint, suppressing T cell proliferation and activity, typically to avoid an overactive immune response. Merck admits that certain cancer cells express ligands that bind to PD-1 and result in suppression of T cell proliferation and activity. Merck admits that when PD-1 is triggered in this way, the ability of T cells to remove unwanted cancer cells from the body is decreased and the body's immune system may be prevented from effectively destroying cancer cells. Merck denies the remaining allegations in Paragraph 4 of the Complaint.

5. **Complaint ¶ 5:** The invention at issue here covers using antibodies that bind to PD-1 ("anti-PD-1 antibodies") in a method for treating lung cancer. By binding to PD-1 and blocking the PD-1checkpoint pathway, the anti-PD-1 antibodies allow a patient's immune system to resume its ability to recognize, attack, and destroy lung cancer cells.

**Answer:** Merck admits that the patent in suit purports to claim "[a] method of treating a lung cancer comprising administering a composition comprising a human or humanized anti-PD-1 monoclonal antibody to a human with the lung cancer, wherein the administration of the composition treats the lung cancer in the human," but denies that this was invented in the patent in suit. Merck admits that some antibodies that bind to PD-1 may block the PD-1 checkpoint pathway for some forms of cancer, thereby enhancing the patient's immune response to recognize, attack and destroy such cancer cells. Merck denies that all antibodies that bind to PD-1 may be

used in a method for treating lung cancer, denies that all antibodies that bind to PD-1 block the PD-1 checkpoint pathway, and denies the remaining allegations in Paragraph 5 of the Complaint.

6. **Complaint ¶ 6:** The Plaintiffs put this scientific breakthrough into practice by developing an anti-PD-1 antibody called nivolumab, the first anti-PD-1 antibody approved anywhere in the world for cancer treatment, and the first anti-PD-1 antibody approved in the United States for the treatment of lung cancer.

**Answer:** Merck admits that nivolumab has been approved for the treatment of certain patients with lung cancer in certain parts of the world, including the United States. Merck denies that the alleged inventors on the patent in suit developed nivolumab and denies the remaining allegations in Paragraph 6 of the Complaint.

7. **Complaint ¶ 7:** Merck is threatening to exploit that invention with a later-developed anti-PD-1 antibody. As described below, Merck is preparing to infringe Plaintiffs' patent for methods of treating lung cancer with anti-PD-1 antibodies.

**Answer:** Merck denies the allegations in Paragraph 7 of the Complaint.

## PARTIES

8. **Complaint ¶ 8:** BMS is a corporation organized under the laws of the state of Delaware, with a principal place of business at 345 Park Ave., New York, New York 10154. E. R. Squibb & Sons, L.L.C., is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business at Route 206 & Province Line Road, Princeton, New Jersey 08543. Ono is a corporation organized under the laws of Japan, with a place of business at 8-2 Kyutaromachi 1-chome, Chuo-ku, Osaka 541-8654, Japan. Tasuku Honjo is an individual with a place of business at Kyoto University, Graduate School of Medicine, Yoshida, Sakyo-ku, Kyoto 606-8501, Japan.

**Answer:** Merck lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint and, therefore, denies these allegations.

9. **Complaint ¶ 9:** On information and belief, Defendant Merck & Co., Inc. is a corporation incorporated under the laws of the state of New Jersey with a place of business at 2000 Galloping Hill Rd., Kenilworth, New Jersey, 07053. On information and belief, Defendant Merck Sharp & Dohme Corp. is a subsidiary of Merck & Co., Inc., and is a corporation incorporated under the laws of the state of New Jersey with a place of business at 2000 Galloping Hill Rd., Kenilworth, New Jersey, 07053.

**Answer:** Merck & Co., Inc. admits that it is a corporation incorporated under the laws of

the state of New Jersey. Merck & Co., Inc. also admits that it has a place of business at 2000 Galloping Hill Road, Kenilworth, New Jersey, but denies that the zip code for this address is 07053 and states that the zip code is 07033. Merck admits that MSD is a subsidiary of Merck & Co., Inc., and is a corporation incorporated under the laws of the state of New Jersey with a place of business at One Merck Drive, Whitehouse Station, NJ, 08889, USA. Merck denies the remaining allegations in Paragraph 9 of the Complaint.

## JURISDICTION AND VENUE

10. **Complaint ¶ 10:** This is a declaratory judgment action pursuant to 28 U.S.C. §§ 2201-2202 for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 271 et seq.

**Answer:** Merck admits that Plaintiffs' Complaint purports to state a claim for relief under the Patent Laws of the United States, 35 U.S.C. § 271 et seq., and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

11. **Complaint ¶ 11:** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

**Answer:** Merck states that it will not contest that subject-matter jurisdiction exists over this Complaint under 28 U.S.C. §§ 1331 and 1338, but it denies committing any infringement or other tortious or unlawful act.

12. **Complaint ¶ 12:** This Court has personal jurisdiction over both Defendants because they are registered with the Delaware Department of State to transact business in Delaware and, upon information and belief, have systematic and continuous contacts in Delaware, do regularly transact business in Delaware, have derived substantial revenue from sales of pharmaceutical products in Delaware, market their anti-PD-1 antibody product pembrolizumab in Delaware for the treatment of melanoma, and are expected to market pembrolizumab in Delaware for the treatment of lung cancer. On information and belief, Defendants have repeatedly availed themselves of the Delaware Courts.

**Answer:** Merck admits that MSD is registered with the Delaware Department of State to transact business in Delaware, that MSD has transacted some business within this judicial district, that MSD derives some revenues from sales in this district and that MSD markets pembrolizumab

throughout the United States, including in Delaware. Merck admits that MSD has filed lawsuits in Delaware. Merck states that for purposes of this action it will not contest personal jurisdiction in this district. Merck denies the remaining allegations in Paragraph 12 of the Complaint.

13. **Complaint ¶ 13:** Defendants reside in this judicial district and venue is proper in this district under 28 U.S.C. §§ 1391(b), (c), and/or 1400(b).

**Answer:** Merck states that for purposes of this action it will not contest that venue is proper in this district under 28 U.S.C. §§ 1391(b), (c), and/or 1400(b). Merck denies the remaining allegations in Paragraph 13 of the Complaint.

## INVENTION OF METHODS FOR TREATING CANCER

14. **Complaint ¶ 14:** On June 30, 2015, the United States Patent & Trademark Office ("USPTO") duly and legally issued United States Patent No. 9,067,999 (the "999 patent" (Exhibit 1)) titled "Immunopotentiative Composition." The inventors of the 999 patent showed for the first time that anti-PD-1 antibodies were useful in methods to treat cancer. Tasuku Honjo is a co-inventor and original co-assignee of the 999 patent. Ono is an original co-assignee and exclusive licensor of BMS under the 999 patent. BMS and Squibb are each exclusive licensees of one or more exclusionary rights under the 999 patent. The 999 patent claims methods for treating cancer with an antibody against PD-1.

**Answer:** Merck admits that the face of U.S. Patent No. 9,067,999 (the "'999 patent") indicates that it is entitled "Immunopotentiative Composition," that it was issued on June 30, 2015, and that Tasuku Honjo and Ono are listed as assignees of the '999 patent. Merck also admits that Tasuku Honjo is listed as an inventor on the face of the '999 patent. Merck denies that the '999 patent was duly and legally issued. Merck lacks sufficient knowledge or information to form a belief as to the exact nature of Plaintiffs' respective rights in the '999 patent. Merck admits that what purports to be a copy of the '999 patent is attached as Exhibit 1 to the Complaint. Except as so admitted, Merck denies the allegations in Paragraph 14 of the Complaint.

15. **Complaint ¶ 15:** Plaintiffs have put the invention of the 999 patent into practice by developing the breakthrough biologic drug nivolumab. Nivolumab is a monoclonal antibody that recognizes and binds to the PD-1 protein. When nivolumab binds to the PD-1 protein, that PD-1 protein cannot interact with its natural binding partners. Using nivolumab to block the interaction between PD-1 and its binding partners allows a more robust T cell response by the

patient's own immune system.

**Answer:** Merck denies that the alleged inventors on the patent in suit developed nivolumab. Merck lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint and, therefore, denies these allegations.

16. **Complaint ¶ 16:** Clinical testing of nivolumab confirms the remarkable promise of anti-PD-1 immunotherapy. After rigorous worldwide testing, on July 4, 2014, nivolumab became the first anti-PD-1 antibody approved anywhere in the world for treating cancer, when Japanese regulatory authorities approved nivolumab for the treatment of melanoma, a deadly form of skin cancer (http://www.ono.co.jp/eng/news/pdf/sm_cn140704.pdf). On December 22, 2104, the FDA approved nivolumab for treatment of advanced melanoma in the United States.

**Answer:** Merck admits that in Ono's July 4, 2014 Press Release cited in Paragraph 16 of the Complaint, Ono announced receiving "manufacturing and marketing approval for the human anti-human PD-1 monoclonal antibody 'OPDIVO® Intravenous Infusion 20 mg/100mg' ('OPDIVO') for the treatment of unresectable melanoma." Merck also admits that in Ono's July 4, 2014 Press Release cited in Paragraph 16 of the Complaint, Ono stated, "OPDIVO is the world's first approved drug targeting PD-1." Merck admits that on December 22, 2014, the FDA approved nivolumab as a treatment for certain patients with advanced melanoma. Except as so admitted, Merck lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint and, therefore, denies these allegations.

17. **Complaint ¶ 17:** Plaintiffs have continued worldwide development of nivolumab for treatment of a broad range of cancers, including non-small cell lung cancer, renal cell carcinoma, head and neck cancer, glioblastoma, and non-Hodgkin lymphoma. In Phase III clinical testing for lung cancer, patients with advanced lung cancer who received nivolumab showed superior overall survival (41% reduction in the risk of death) compared to those who received the standard of care chemotherapy agent docetaxol (http://news.bms.com/press-release/fda-approves-opdivo-nivolumab-treatment-patients-previously-treated-metastatic-squamou). Based, at least in part, on these clinical results, on February 27, 2015, the FDA accepted Plaintiffs' Biologics License Application ("BLA") for use of nivolumab to treat lung cancer. Just days later, on March 4, 2015, the FDA approved nivolumab for treatment of advanced non-small cell lung cancer in the United States. These clinical results and the FDA's recent approval of nivolumab for the treatment of lung cancer confirm that the anti-PD-1 cancer treatments developed by the Plaintiffs can be used to save the lives of patients with lung cancer.

**Answer:** Merck admits that in BMS's March 4, 2015 Press Release cited in Paragraph 17 of the Complaint, BMS stated, "Opdivo demonstrated significantly superior overall survival (OS) vs. docetaxel, with a 41% reduction in the risk of death (hazard ratio: 0.59 [95% CI: 0.44, 0.79; p=0.00025]), in a prespecified interim analysis of a Phase III clinical trial." Merck also admits that in BMS's March 4, 2015 Press Release cited in Paragraph 17 of the Complaint, BMS stated, "the U.S. Food and Drug Administration (FDA) has approved Opdivo (nivolumab) injection, for intravenous use, for the treatment of patients with metastatic squamous non-small cell lung cancer (NSCLC) with progression on or after platinum-based chemotherapy." Merck further admits that on March 4, 2015, the FDA approved nivolumab for the treatment of certain patients with lung cancer. Merck lacks sufficient knowledge or information to form a belief as to the truth of the statements contained in the cited BMS press releases and also lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 17 of the Complaint and, therefore, denies these allegations.

## MERCK'S FUTURE INFRINGEMENT

18. **Complaint ¶ 18:** Merck is planning to exploit the invention of the 999 patent with an anti-PD-1 antibody called pembrolizumab. On information and belief, Merck started developing pembrolizumab after Plaintiffs had made and started testing nivolumab. Merck has received FDA approval to sell pembrolizumab in the United States for the treatment of melanoma, and has since been engaged in efforts to meet the FDA regulatory requirements for marketing, distributing, offering for sale, and selling pembrolizumab for the treatment of lung cancer. According to Merck, pembrolizumab is a PD-1 antibody that works by blocking the PD-1 checkpoint to treat cancer.

**Answer:** Merck admits that on September 4, 2014, MSD received FDA approval of Keytruda® (pembrolizumab) as a treatment for certain patients with melanoma. Merck further admits that on October 2, 2015, MSD received FDA approval of Keytruda® for the treatment of certain patients with non-small cell lung cancer. Merck further admits that on December 18, 2015, MSD received FDA approval for an expanded melanoma indication for Keytruda®. Merck admits

that pembrolizumab works by blocking the interaction between PD-1 and its ligands, PD-L1 and PD-L2. Merck denies the remaining allegations in Paragraph 18 of the Complaint.

19. **Complaint ¶ 19:** On information and belief, Merck has known about the 999 patent and has known that the use of pembrolizumab will infringe claims of the 999 patent since June 30, 2015, when the 999 patent was issued by the USPTO and this declaratory judgment action was filed.

**Answer:** Merck admits that some individuals employed by Merck have known about the '999 patent since June 30, 2015, when Plaintiffs filed the Complaint. Merck admits that the face of the '999 patent indicates that it was issued by the USPTO on June 30, 2015. Merck denies the remaining allegations in Paragraph 19 of the Complaint.

20. **Complaint ¶ 20:** Merck and its affiliates have had knowledge of the family of patents that includes the 999 patent for many years and have instituted legal proceedings seeking to invalidate the corresponding patents in Europe. Merck initiated an opposition proceeding in the European Patent Office on June 20, 2011, against European Patent EP 1 537 878 ("EP 878 patent"), the European counterpart of U.S. Patent Number 8,728,474 (the "474 patent"), the 999 patent's parent patent. Merck made numerous submissions in that opposition proceeding and an oral hearing was held on June 4, 2014. That same day, the panel hearing oral argument rejected Merck's opposition and held the EP 878 patent valid.

**Answer:** Merck admits that Merck & Co., Inc. filed an opposition on June 20, 2011 in the European Patent Office seeking revocation of the EP '878 patent, a European patent that shares a common priority application with the '999 patent. Merck also admits that Merck & Co., Inc. provided the European Patent Office with information in the course of the opposition and that oral proceedings were held on June 4, 2014. Merck further admits that the Opposition Division of the European Patent Office has not as of the date of this answer revoked the EP '878 patent, but states that the European Patent Office proceedings are ongoing and that Merck & Co., Inc. initiated an appeal of the Opposition Division's decision on October 10, 2014 and filed its grounds of appeal on February 3, 2015. Except as so admitted, Merck denies the remaining allegations in Paragraph 20 of the Complaint.

21. **Complaint ¶ 21:** On May 22, 2014, Merck's European affiliate filed a revocation

action in the United Kingdom seeking to revoke the U.K. patent corresponding to the EP 878 patent. BMS has filed a counterclaim alleging infringement by pembrolizumab in that action.

**Answer:** Merck admits that Merck Sharp & Dohme Limited filed a revocation action in the United Kingdom seeking to revoke the U.K. patent corresponding to the EP '878 patent. Merck also admits that BMS has filed a counterclaim alleging infringement by pembrolizumab in that action. Except as so admitted, Merck denies the remaining allegations in Paragraph 21 of the Complaint.

22. **Complaint ¶ 22:** On September 4, 2014, the day Merck received approval to sell its pembrolizumab product in the Unites States for treatment of melanoma, Plaintiffs filed suit against Merck in this judicial district, asserting the 474 patent, which claims *inter alia* the use of a PD-1 antibody to treat melanoma.

**Answer:** Merck admits that MSD received approval from the FDA on September 4, 2014 to market pembrolizumab as a treatment for certain patients with melanoma. Merck also admits that Plaintiffs filed suit against Merck in this judicial district on September 4, 2014, asserting the '474 patent. Merck denies the remaining allegations in Paragraph 22 of the Complaint.

23. **Complaint ¶ 23:** On information and belief, on May 6, 2014, Merck filed a Biologics License Application ("BLA") seeking approval to use pembrolizumab to treat patients with advanced melanoma. The FDA granted priority review and set a target action date for review of Merck's BLA by October 28, 2014. On September 4, 2014, four months after Merck submitted its BLA, and nearly two months before the FDA's target action date, the FDA approved pembrolizumab as a treatment for certain patients with melanoma.

**Answer:** Merck admits that MSD filed a BLA seeking approval to market pembrolizumab as a treatment for certain patients with melanoma, and that the FDA approved this BLA on September 4, 2014. Merck also admits that the FDA granted priority review for this BLA with a target action date of October 28, 2014. Merck further admits that on September 4, 2014, the FDA approved pembrolizumab for the treatment of patients with unresectable or metastatic melanoma and disease progression following ipilimumab and, if BRAF V600 mutation positive, a BRAF inhibitor. Merck denies the remaining allegations in Paragraph 23 of the Complaint.

24. **Complaint ¶ 24:** On information and belief, on April 19, 2015, Merck submitted a supplemental BLA seeking approval of pembrolizumab for the treatment of lung cancer.

**Answer:** Merck admits that MSD submitted a supplemental BLA to the FDA seeking approval to market pembrolizumab for the treatment of certain patients with lung cancer. Merck denies the remaining allegations in Paragraph 24 of the Complaint.

25. **Complaint ¶ 25:** On information and belief, on June 1, 2015, the FDA granted priority review of Merck's supplemental BLA seeking approval of pembrolizumab for the treatment of lung cancer and set a target action date of October 2, 2015.

**Answer:** Merck admits that the FDA granted priority review for Merck's supplemental BLA for pembrolizumab for the treatment of certain patients with lung cancer, with a target action date of October 2, 2015. Merck denies the remaining allegations in Paragraph 25 of the Complaint.

26. **Complaint ¶ 26:** According to Merck's press release announcing the FDA's priority review of Merck's supplemental BLA, the president of Merck Research Laboratories stated that "[w]e believe that data submitted to the FDA illustrate the significant potential of [pembrolizumab] to treat advanced non-small cell lung cancer – and we look forward to working with the FDA to bring our anti-PD-1 therapy to patients afflicted with this devastating cancer" (http://www.mercknewsroom.com/news-release/oncology-newsroom/fda-accepts-supplemental-biologics-license-application-sbla-keytruda-).

**Answer:** Merck admits that in its June 1, 2015 Press Release cited in Paragraph 26 of the Complaint, Merck stated that the president of Merck Research Laboratories said that "[w]e believe that data submitted to the FDA illustrate the significant potential of [pembrolizumab] to treat advanced non-small cell lung cancer – and we look forward to working with the FDA to bring our anti-PD-1 therapy to patients afflicted with this devastating cancer." Merck denies the remaining allegations in Paragraph 26 of the Complaint.

27. **Complaint ¶ 27:** By virtue of seeking imminent approval to market and sell pembrolizumab as a treatment for certain patients with lung cancer, Merck has the specific intent to cause infringement of the 999 patent or, at a minimum, Merck has been willfully blind to the infringement of the 999 patent that will inevitably result.

**Answer:** Merck denies the allegations in Paragraph 27 of the Complaint.

28. **Complaint ¶ 28:** On information and belief, Merck has begun, manufacturing, distributing, using, offering for sale, selling, and/or importing in the United States the pembrolizumab antibody product to be prescribed and used for the treatment of lung cancer. On information and belief, such pembrolizumab is currently being used in the United States for the treatment of melanoma, and will be used for the treatment of lung cancer in the United States immediately upon pembrolizumab's approval for the treatment of lung cancer.

**Answer:** Merck admits that MSD received approval from the FDA on September 4, 2014 to market pembrolizumab as a treatment for certain patients with melanoma and that MSD received approval from the FDA on October 2, 2015 to market pembrolizumab as a treatment for certain patients with non-small cell lung cancer. Merck further admits that MSD received approval from FDA on December 18, 2015 to market pembrolizumab for an expanded melanoma indication and that it has begun manufacturing, distributing, using, offering for sale, selling, and/or importing pembrolizumab in the United States. Merck further admits that pembrolizumab is being used by third parties for its FDA approved uses. Merck denies the remaining allegations in Paragraph 28 of the Complaint.

## COUNT I: DECLARATORY JUDGMENT OF PATENT INFRINGEMENT

29. **Complaint ¶ 29:** Plaintiffs incorporate by reference paragraphs 1-28 as if fully set forth herein.

**Answer:** Merck repeats the responses contained in Paragraphs 1 through 28 as though fully set forth herein.

30. **Complaint ¶ 30:** As set forth above, a real, immediate, substantial, and justiciable controversy has arisen and now exists between the parties under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

**Answer:** Merck does not contest that a justiciable controversy has arisen and now exists between the parties as to whether Merck is infringing the '999 patent.

31. **Complaint ¶ 31:** Merck is actively preparing to and will imminently infringe the 999 patent. As set forth above, on information and belief, Merck has sought approval to sell pembrolizumab in the United States for the treatment of lung cancer, and Merck expects to receive that approval between today and October 2, 2015. On information and belief, by making

meaningful preparations to market, make, use, sell, offer for sale, and/or import pembrolizumab in the United States for the treatment of lung cancer, Merck will imminently infringe the 999 patent, including by actively inducing infringement under 35 U.S.C. § 271(b) and as a contributory infringer under 35 U.S.C. § 271(c).

**Answer:** Merck admits that MSD submitted a supplemental BLA to the FDA seeking approval to market pembrolizumab for the treatment of certain patients with lung cancer and that on October 2, 2015, the FDA approved Keytruda® for treatment of certain patients with non-small cell lung cancer. Merck admits that it is marketing, making, using, selling, offering for sale, and/or importing pembrolizumab in the United States, including for the treatment of certain types of melanoma and lung cancer. Merck further admits that pembrolizumab is being used by third parties for its FDA approved uses. Merck denies the remaining allegations in Paragraph 31 of the Complaint.

32. **Complaint ¶ 32:** On information and belief, Merck has been aware of the 999 patent since June 30, 2015, when the USPTO issued the 999 patent. Should Merck choose to market, make, use, sell, offer for sale, and/or import pembrolizumab in the United States for the treatment of lung cancer following approval to do so, Merck's infringement will be deliberate, willful, and in reckless disregard of valid patent claims of the 999 patent.

**Answer:** Merck admits that some individuals employed by Merck have been aware of the '999 patent since June 30, 2015. Merck also admits that the face of the '999 patent indicates that it was issued by the USPTO on June 30, 2015. Merck denies the remaining allegations in Paragraph 32 of the Complaint.

33. **Complaint ¶ 33:** Plaintiffs will be injured by and will suffer substantial damages as a result of Merck's imminent infringement.

**Answer:** Merck denies the allegations in Paragraph 33 of the Complaint.

## JURY DEMAND

34. Merck acknowledges that the Complaint sets forth a demand for trial by jury.

## PRAYER FOR RELIEF

35. Merck denies that Plaintiffs are entitled to any of the relief requested in paragraphs (a)–(e) of Plaintiffs' prayer for relief, and further deny that Plaintiffs are entitled to any relief whatsoever. All allegations not specifically admitted are denied.

## AFFIRMATIVE AND OTHER DEFENSES

36. Merck asserts the following affirmative and other defenses and reserves the right to amend this Answer as additional information becomes available.

### FIRST DEFENSE
(Failure to State a Claim)

37. The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE
(Non-Infringement)

38. Merck is not infringing and has not infringed (including directly, indirectly, contributorily, or by inducement) any valid and enforceable claim of the '999 patent, either literally or under the doctrine of equivalents.

### THIRD DEFENSE
(Invalidity)

39. Each and every claim of the '999 patent is invalid for failing to comply with one or more requirements of the patent laws of the United States, including but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### FORTH DEFENSE
(Prosecution-History Estoppel)

40. Plaintiffs' claims are barred, in whole or in part, by representations or actions taken during the prosecution of the '999 patent, and related patents under the doctrine of prosecution-history estoppel, and/or prosecution disclaimer.

**FIFTH DEFENSE**
(35 U.S.C. § 288)

41. Plaintiffs are not entitled to seek recovery of their costs pursuant to 35 U.S.C. § 288.

**SIXTH DEFENSE**
(Exceptional Case)

42. This case is exceptional under 35 U.S.C. § 285. Merck is entitled to an award of its attorneys' fees incurred in connection with defending and prosecuting this action.

**PRAYER FOR RELIEF**

WHEREFORE, Merck respectfully requests the following relief:

(a) the entry of judgment on the Complaint in favor of Merck, and against Plaintiffs, with Plaintiffs not being awarded any relief;

(b) a declaration that Merck has not infringed and is not infringing any valid and enforceable claim of the '999 patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents;

(c) a declaration that each and every claim of the '999 patent is invalid;

(d) denial of Plaintiffs' request for damages, attorney fees, costs, and expenses;

(e) a declaration that this is an "exceptional case" within the meaning of 35 U.S.C. § 285, and an award to Merck of its expenses, costs and attorneys' fees;

(f) an award to Merck of such other and further equitable or legal relief as the Court deems just and proper.

Respectfully submitted,

McCARTER & ENGLISH, LLP

/s/ Daniel M. Silver

Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Benjamin A. Smyth (#5528)
405 N. King St., 8th Floor
P.O. Box 111
Wilmington, DE 19899
(302) 984-6385
mkelly@mccarter.com
dsilver@mccarter.com
bsmyth@mccarter.com

*Counsel for Defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp.*

*Of Counsel:*

David T. Pritikin
William H. Baumgartner, Jr.
Lisa A. Schneider
Dave Giardina
Gwen Hochman Stewart
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
dpritikin@sidley.com
wbaumgartner@sidley.com
lschneider@sidley.com
dgiardina@sidley.com
gstewart@sidley.com

Jeffrey P. Kushan
Fitz B. Collings
Kirsten E. Braun
Lauren C. Cranford
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
jkushan@sidley.com
fcollings@sidley.com
kbraun@sidley.com
lcranford@sidley.com

Todd L. Krause
Grace I. Chiang
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
tkrause@sidley.com
gchiang@sidley.com

Dated: March 31, 2016